# UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

### No. 23-2798

In re: T-Mobile Customer Data Security Breach Litigation
_____

Veera Daruwalla, Washinton Western, 2:23-cv-01118, et al.,
Appellees,

v.

T-Mobile US, Inc., et al.

John Jacob Pentz, III, as representative to the Estate of Connie Pentz,
Appellant

Appeal from the United States District Court
for the Western District of Missouri-Kansas City
(Case No. 4:21-md-03019-BCW)

_____

### BRIEF OF APPELLANT PENTZ
_____

John J. Pentz
13133 N. Vistoso Ranch Pl.
Oro Valley, AZ 85755
978.985.4668
jjpentz3@gmail.com

## Summary of the Case

This appeal arises out of a class action brought against T-Mobile for a data breach that affected 76 million T-Mobile customers. That class action case settled less than eight months after it was filed for the amount of $350 million, or approximately $4.60 per class member. For achieving this speedy settlement, Class Counsel requested 22.5% of the $350 million settlement fund, or $78.75 million, which represents 13.1 times their documented lodestar at the time of the fairness hearing.

Appellant Pentz[1] filed a timely objection to Class Counsel's fee request. In response, Class Counsel sought to take Mrs. Pentz's deposition, but failed to serve a proper subpoena upon Mrs. Pentz. After a fairness hearing on January 20, 2023, the Court struck Mrs. Pentz' objection for failure to sit for a deposition, and approved the full $78.75 million fee.

Appellant Pentz requests ten minutes of oral argument for each side.

---

[1] Connie Pentz passed away on February 7, 2023.

## Corporate Disclosure Statement

Connie Pentz and the Estate of Connie Pentz are individuals.

# TABLE OF CONTENTS

Summary of the Case……………………………………………………..i

Corporate Disclosure Statement…………………………………………..ii

Table of Contents………………………………………………...…iii

Table of Authorities……………………………………….…...….…..iv

Statement of Jurisdiction…………...…………………………………..1

Statement of the Issues……………………………………………………2

Statement of the Case……………………………………………….…3

Summary of Argument……………………………………...…..….…….6

Argument……………………………………………………......…8

I.        Standard of Review.............................................................................8

II.       The District Court Abused Its Discretion in Finding that the
         Johnson Factors Justify a Multiplier of 13.1.......................................8

III.      The District Court Should Have Referred to the Empirical Studies
         Cited by the Objectors When Assessing the Comparison-to-Similar-
         Cases Factor……………………………………………………...….12

IV.      The District Court Committed Legal Error in Striking Pentz's
         Objection…………………………………………………...…..…..14

Conclusion………………………………………………………………18

Certifications...........................................................................................19

Certificate of Service..............................................................................20

# TABLE OF AUTHORITIES

**Cases**                                                                          page

*Devlin v. Scardeletti*, 536 U.S. 1 (2002).............................................1, 7, 14

*In re Equifax Customer Data Sec. Breach Litig.*,
999 F.3d 1247 (11th Cir. 2021)…………………………………………..12

*In re Tremont Secs. Law State Law & Ins. Litig.*,
699 Fed. Appx. 8 (2nd Cir. 2017)…………………………………..…2, 10

*In re Visa Check/Mastermoney Antitrust Litig.*,
297 F.Supp. 2d 503, 522 (EDNY 2003)…………………………………..9

*Lansford v. United States*, 570 F.2d 221 (8th Cir. 1977)…………………..2

*Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*,
540 F.2d 102, 111 (3rd Cir. 1976)………………………………………11

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999)…………………8

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985)........................2, 7, 16

*Prandini v. Natl. Tea Co.*, 585 F.2d 47, 52-53 (3rd Cir. 1978)……………..11

*Rawa v. Monsanto Co.*, 934 F.3d 862 (8th Cir. 2019).........................2, 11, 16

*Timber Ridge Escapes, LLC v. Quality Structures of Ark., LLC,*
6 F.4th 781, 787 (8th Cir. 2021)……………………………………..8

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
369 F.3d 96 (2nd Cir. 2005).............................................................................2

**Articles**

Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993-2008*, 7 J. Empirical Legal Studies 248 (2010)……………………………………………………………....13

## STATEMENT OF JURISDICTION

1. **District Court's Jurisdiction.** The District Court had jurisdiction over this case under the Class Action Fairness Act, 28 U.S.C. §1332 (d)(2), *et seq*., because the amount in controversy exceeds $5,000,000, there are more than 100 Class members, and minimal diversity exists between the Defendant and at least one Class member.

2. **Appellate Jurisdiction.** This Court has jurisdiction pursuant to 28 U.S.C. § 1291. The district court entered its Order Striking the Objection of Connie Pentz, its Order and Judgment Granting Final Approval of Class Action Settlement and Awarding Attorney's Fees, Costs, Expenses, and Service Awards, and the Clerk's Judgment on June 29, 2023. App. 39, R. Doc. 235. App. 90, R. Doc. 234. Appellant Hampe filed a timely notice of appeal on July 31, 2023, within thirty days of the above Orders. R. Doc. 237. Appellant Pentz filed a Notice of Appeal on August 4, 2023, within fourteen days from the Hampe notice of appeal. R. Doc. 240. FRAP 4(a)(3). Because Appellant Pentz filed an objection to attorney's fees in the court below, Pentz has the right to appeal from the fee award. *Devlin v. Scardeletti*, 536 U.S. 1 (2002).

# STATEMENT OF ISSUES

1.      Did the district court abuse its discretion by failing to take into account the megafund nature of the settlement when awarding attorney's fees? *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 369 F.3d 96 (2nd Cir. 2005).

2.      Did the district court abuse its discretion by awarding a fee that represents more than thirteen times Class Counsel's documented lodestar at the time of the fairness hearing? *Rawa v. Monsanto Co.*, 934 F.3d 862, 870 (8th Cir. 2019).

3.      Did the district court abuse its discretion by applying a risk multiplier to future lodestar that has not yet been incurred, and that will carry no risk of non-payment if is incurred? *In re Tremont Secs. Law State Law & Ins. Litig.*, 699 Fed. Appx. 8 (2nd Cir. 2017).

4.      Did the district court err in striking Appellant's objection under Fed. R. Civ. Proc. 12(f), which applies only to pleadings defined in FRCP 7(a)? Fed. R. Civ. P. 12(f).  Fed. R. Civ. P. 7(a).  *Lansford v. United States*, 570 F.2d 221 (8th Cir. 1977).

5.      Did the district court violate *Phillips Petroleum v. Shutts* by encumbering the right to object with the requirement that an objector sit for a deposition?  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985).

## STATEMENT OF THE CASE

This class action arises out of a massive data breach that affected approximately 76 million T-Mobile customers.  App. 40, R. Doc. 235 at 2.  Shortly after T-Mobile announced the data breach, numerous lawsuits were filed across the country as law firms jockeyed for the lucrative position of lead counsel.  *Id*.  The cases were consolidated in an MDL in the Western District of Missouri.  *Id*.

Over 35 attorneys filed applications to be appointed class counsel.  R. Doc. 158-1 at 1-2.  On February 25, 2022, the Court appointed Keller Rohrback LLP and Hausfeld LLP, without inquiring about whether any of their clients had entered into a fee agreement for the benefit of the Class, and whether the fee agreement was reasonable.  App. 41, R. Doc. 235 at 3.  The case settled just five months later, without any depositions being taken and no motion to dismiss filed.  R. Doc. 157.

The settlement establishes a $350 million common fund, which amounts to $4.60 per class member.   R. Doc. 158 at 1.  The settlement offered up to $25 to each class member who filed a claim.  *Id*.  Because fewer than 2% of the Class filed claims, each claimant received more than $25.  R. Doc. 220 at 6.

Because Class counsel were not bound by a competitive fee agreement, and no named plaintiff stepped forward to negotiate on behalf of the Class after the settlement was reached, Class counsel petitioned for fees of 22.5% of the $350 million common fund, or $78.75 million, for five months of work. App. 43, R. Doc. 235 at 5. At the time of the fee motion, Class counsel's reported lodestar was just $5,973,534, including $2,327,134 from non-lead counsel firms. R. Doc. 179-1 at 4. Class counsel also estimated that they would expend a further $2.2 million in lodestar implementing and administering the settlement, but improperly sought to include that amount in the lodestar for crosscheck purposes. R. Doc. 179-1 at 21. Based upon the $5,973,534 lodestar that had been subject to risk, albeit slight, Class counsel's fee request represents a 13.1 lodestar multiplier.

Connie Pentz was a T-Mobile customer and a Class member who received direct notice of the settlement. She filed an objection to the preposterously high fee request, given the short duration of the case (during which risk attached) and the relatively low claimed lodestar amount relative to the requested fee. App. 94, R. Doc. 197. She relied upon this Court's guidance in *Rawa v. Monsanto Co.*, 934 F.3d 862 (8th Cir. 2019) to argue that the fee award should not exceed by much the 5.3 multiplier that this Court characterized as "high" there. *Id*. If the court were inclined to

calculate a percentage fee, she urged the court to start with the percentage benchmark for settlements in the $350 million range, which is 12%, but then to reduce that amount to 10% because a 12% fee represents a lodestar multiplier of 7.  App. 96, R. Doc. 197 at 3.

Mrs. Pentz' objection was very clear and straightforward, although it contains case citations and was clearly produced with the assistance of an attorney, the undersigned.  Class counsel seized on the clarity and sophistication of the objection as evidence of some nefarious plot, when in fact the assistance of counsel promotes clarity and makes things easier for the court.  Class counsel sought to schedule a deposition with Mrs. Pentz, but were unable to agree on an acceptable time.  Class counsel never served Mrs. Pentz with a subpoena commanding her appearance at a deposition. App. 91, R. Doc. 233 at 2.

On June 29, 2023, the district court approved the settlement and the full requested fee, addressing and overruling Mrs. Pentz's fee objections in the course of its decision awarding a 22.5% fee.  App. 39, R. Doc. 235.  In addition, the district court entered an order striking Mrs. Pentz' objection under Rule 12(f) for her failure to be deposed.  App. 90, R. Doc. 233.  The court stated that the deposition testimony would have been "relevant to the

weight the Court should give Pentz's objection;"[2] however, given the court's rejection of her objections for legal reasons, it is difficult to understand what further impeachment of the objection would have been achieved by ascertaining that Mrs. Pentz had been assisted by the undersigned in producing the objection.

## SUMMARY OF ARGUMENT

The district court abused its discretion in approving an attorney's fee award that represents a lodestar multiplier of 13.1 in a case that lasted less than seven months from filing to settlement. The court improperly disregarded a prior ruling by this Court that a lodestar multiplier of 5.3 is "high," and held that there is no upper limit to the range of permissible multipliers. While there may be a case in which the risk and difficulty could justify a multiplier of 13 or more, this case is decidedly not it. None of the *Johnson* factors warrants a multiplier in excess of this Circuit's previous highwater mark of 5.3.

This Court should adopt the megafund rule followed by the majority of federal circuits, and hold that in cases that result in a verdict or settlement of more than $175 million, a fee percentage less than 15% is warranted. In a prior study of megafund attorney's fees published in 2010, the authors found

---

[2] App. 91, R. Doc. 233 at 2.

that the mean and median percentage fees for all settlements above $175 million are 12% and 10.2%, respectively. A 10% fee in this case would produce a fee of $35 million, which would represent a lodestar multiplier of 5.83. Neither the district court nor Class counsel has made the case that this figure would not adequately compensate Class counsel for the risk undertaken, while preserving as much of the fund as possible for the Class. After all, the purpose of the common fund doctrine is to avoid unjust enrichment of the Class, not to test the outer limits of what courts might permit counsel to get away with.

The district court erred as a matter of law in striking Pentz's objection after it had considered it and overruled it. Fed. R. Civ. Proc. 12(f) does not permit the striking of an objection. In addition, after the court had considered and rejected the objection on its merits, there was no purpose served by striking the objection, other than to deprive the objector of her right to appeal guaranteed by *Devlin v. Scardeletti*. Moreover, burdening the right to object with a discovery requirement violates *Phillips Petroleum v. Shutts*.

**ARGUMENT**

## I.     Standard of Review.

A district court's award of attorney's fees is reviewed for abuse of discretion. *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999). Questions of law and methodology are reviewed *de novo. Timber Ridge Escapes, LLC v. Quality Structures of Ark., LLC,* 6 F.4[th] 781, 787 (8th Cir. 2021).

## II.     The District Court Abused its Discretion in Finding that the *Johnson* Factors Justify a Lodestar Multiplier of 13.1

The district court justified its award of a 13.1 lodestar multiplier, representing a bonus over lodestar of more than $72 million, in part by the riskiness of the litigation.  But the risk that should be measured when assessing that factor is the risk that the case will not settle for some amount. As the district court itself noted in its order, it is the "risk of receiving little or no recovery" that should be examined, not the risk of losing at trial or the existence of defenses.  App. 69, R. Doc. 235 at 31.  Given that Class counsel here have settled at least five other large data breach class actions in the past five years[3], the risk that this case would not settle for an amount sufficient to reimburse Class counsel's fees several times over was non-existent.

---

[3] R. Doc. 158-3 at 2.

The case's short duration is also a factor that must be taken into account when assessing risk. The fact that the case settled within seven months of consolidation limited the amount of lodestar that Class counsel was at risk of losing if the case did not settle, as well as the amount of time that Class counsel had to go without reimbursement. There are cases in which class counsel have run up tens of millions of dollars of lodestar over several years of litigation, and the lodestar multipliers in those cases have not exceeded five. *See, e.g., In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 522 (EDNY 2003) (calling request for lodestar multiplier of 10 "absurd;" approving multiplier of 3.5 for over seven years of work in highly risky antitrust case).

There is simply no justification for the 13.1 multiplier permitted by the district court on the facts of this case, especially given the extremely low risk that the case would not settle for an amount sufficient to compensate attorney's fees. The fact that this case settled so rapidly is evidence of the high likelihood of settlement when it was filed. The fact that 35 different firms filed class action complaints and applications to serve as class counsel is further evidence that this case was not viewed as particularly risky by the plaintiffs' bar. Defendant T-Mobile did not even bother to file a motion to dismiss to test its defenses before making a settlement offer. This is

evidence that by the time this case was filed there was a template for settling data breach cases, and the only thing to be resolved was how much money the defendant was willing to part with.

The district court also erred in its application of the lodestar crosscheck. First, the court improperly included the 3000 projected future hours that Class counsel claimed it would incur over the next several years implementing the settlement, which represents 27% of the total lodestar. If Class counsel were to receive a megafund market-rate fee of 10%, the extremely generous lodestar multiplier represented by that sum would more than cover any future administrative work.

If the court wished to provide a separate source of payment for any future fees as they are incurred, however, it should have simply established an escrow fund of $2 million for Class counsel to bill against as future fees are generated. Future fees are subject to *zero* risk, as they are incurred *after* the settlement has been finally approved, and the risk of non-recovery is eliminated. *See In re Tremont Secs. Law, State Law & Ins. Litig.*, 699 Fed. Appx. 8, 17 (2nd Cir. 2017) (risk "dissipated" after case settled; improper to award any enhancement of lodestar incurred post-settlement).

It is wholly inappropriate to subject future fees to any sort of multiplier, as they are fully secured.[4]  By including the contingent future fees in the lodestar for purposes of a lodestar crosscheck, the district court subjected them to a 960% multiplier.[5]

If future fees are excluded from the lodestar for purposes of a crosscheck, as they must be, then the crosscheck yields a 13.1 multiplier.  In *Rawa v. Monsanto Co.*, 934 F.3d 862, 870 (8th Cir. 2019), this Court characterized a multiplier of 5.3 as "high."  It is simply impossible to reconcile that holding with the district court's conclusion that a multiplier of 13 is still within the bounds of reasonableness, especially in this case.  The district court's reading of *Rawa* robs the word "high" of its ordinary meaning, and renders the decision meaningless.  It is inconceivable that a multiplier of 5.3 is high, but a multiplier two and a half times greater, at 13.1, is still merely high, and not excessive.

---

[4] It is also improper to compensate any portion of Class counsel's lodestar spent defending this fee appeal.  *See Prandini v. Natl. Tea Co.,* 585 F.2d 47, 52-53 (3rd Cir. 1978); *See also Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 111 (3rd Cir. 1976) (services performed in connection with fee application or fee appeal benefit attorney, not the fund, and therefore no fees are permitted for time spent on fee application or appeal)

[5] Alternatively, the $2 million future fee fund could be deducted off the top of the requested $78.75 million fee, leaving $76.75 million to be crosschecked against a $6 million lodestar.  The resulting multiplier is 12.8, virtually unchanged from 13.1.

Pursuant to FRAP 28(i), Appellant adopts pages 32-34 and 36-37 of the Opening Brief of Cassie Hampe as though fully set forth herein.

## III. The District Court Should Have Referred to the Empirical Studies Cited by Objectors When Assessing the Comparison-to-Similar-Cases Factor.

Pursuant to FRAP 28(i), Appellant adopts pages 16-32 of the Opening Brief of Cassie Hampe as though fully set forth herein. Appellant Pentz agrees that this Court should explicitly adopt the megafund approach recognized by the majority of circuits, for purposes of clarity.

Even without a formal recognition of the megafund rule, a proper application of the *Johnson* factors requires courts to refer to empirical studies discussing the mean and median fees in cases that settle for more than $175 million. The district court abused its discretion here by limiting its consideration to other cases from within the Eighth Circuit that settled for less than $100 million. None of these cases is similar to this one.

In the only data breach case in which the fee amount approached the one here, the lodestar multiplier was only 2.6. *See In re Equifax Customer Data Sec. Breach Litig.*, 999 F.3d 1247 (11th Cir. 2021). This means that that 2017 case required much more legal work to obtain the megafund result, and, correspondingly, a higher percentage fee was warranted. This 2022

case settled in seven months largely because most of the difficult legal work had already been invested in cases like *Equifax*.

The district court should have begun its analysis with the 10% median fee for settlements in excess of $175 million found in *Eisenberg and Miller*, Attorney Fees and Expenses in Class Action Settlements: 1993-2008, 7 J. Empirical Legal Studies 248, 265 (2010), cited by Appellant in her objection. App. 96, R. Doc. 197 at 3. If it then found that the 10% fee unjustly enriched the Class, it could have raised the percentage to a number that adequately compensated Class counsel in light of their lodestar and the case's risk. Here, of course, the resulting multiplier of 5.83 would have informed the court that a 10% fee award was, if anything, too "high," and a further reduction of the percentage may have been in order. By failing to adequately analyze a fee at the market rate the district court prejudiced the Class and abused its discretion.

**IV.    The District Court Committed Legal Error in Striking Pentz's Objection.**

Pursuant to FRAP 28(i), Appellant adopts pages 37-45 of the Opening Brief of Cassie Hampe as though fully set forth herein.  The district court struck Appellant Pentz's objection under Fed. R. Civ. P. 12(f), which does not authorize a court to strike an objection, because it is not a pleading under Fed. R. Civ. P. 7(a).

Moreover, the court's decision to strike Appellant's objection after considering and overruling it was for the sole purpose of depriving the Appellant of the right to appeal guaranteed by *Devlin v. Scardeletti*, 536 U.S. 1, 10 (2002), and insulating the court's decision from appellate review.

> What is most important to this case is that nonnamed class members are parties to the proceedings in the sense of being bound by the settlement.  It is this feature of class action litigation that requires that class members be allowed to appeal the approval of a settlement when they have objected at the fairness hearing.

*Id*.

Class Counsel admitted at the fairness hearing that it filed the motions to strike to "provide the Appellate Court another avenue to dispense of the appeals." Jan. 20, 2023 Hrg. Tr., p. 9.  However, once this Court has the substantive legal issues regarding a 13.1 multiplier fully briefed and joined, it would make little sense to dismiss the appeal because of a deposition

notice that was never properly served, especially when Class counsel has admitted that the discovery it sought was a pretext to short-circuit objectors' appellate rights. Striking the objections will not lead to a speedier resolution of this appeal, any more than it did in the lower court. It would completely undermine *Devlin* if a district court could overrule an objection, and then prevent an appeal of its decision by striking the objection after the fact. If the district court had stricken the objections prior to the fairness hearing, thus sparing it the need to consider the fee objections and address them in its order, that would have served the interest of judicial economy. But here, the district court considered and overruled the fee objections in their entirety, providing reasons for rejecting the objectors' suggestions. Only then did it strike the objections, when the only remaining avenue of litigation was an appeal.

The court's consideration and rejection of the objections also undermines Class counsel's stated reasons for needing to depose the objectors. Class counsel claimed that the court needed to know whether the objection was written with the assistance of an attorney in order to know what weight to give it. But the court had no trouble confronting the objection on its face and rejecting its legal arguments. The court did not

identify any information that it required but did not have in order to fully understand the objection.

Contrary to Class counsel's claims that they were seeking discovery in order to provide the court with additional information relevant to the "weight" the judge should give to the objections, the record shows that Class counsel pursued discovery against those objectors who noticed and pointed out the abusively high fee request and this Court's prior reference to a "high" multiplier. The only objectors whom Class counsel sought to depose were those who cited to *Rawa v. Monsanto Co.*, 934 F.3d 862 (8th Cir. 2019).

In *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985), in which the Supreme Court held that a nonresident plaintiff could constitutionally be bound by adequate representation in the forum state, the petitioner was concerned "that absent class members might be subject to discovery, counterclaims, cross-claims, or court costs. Petitioner cites no cases involving any such imposition upon plaintiffs, however. We are convinced such burdens are rarely imposed upon plaintiff class members…" *Id*. at 810.

> If the forum state wishes to bind an absent plaintiff … it must provide minimal procedural due process protection. The plaintiff must receive notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel.

*Id*. at 811-12.

Because the right to object – to be heard – is essential to the due process necessary for a forum court to exercise jurisdiction over an absent plaintiff, it follows that a court may not burden that right by conditioning the right to be heard on the requirement to submit to discovery, or to hire counsel to defend motions filed in a distant forum. "[A]bsent plaintiff class members are not subject to other burdens imposed upon defendants. They need not hire counsel or appear." *Id*. at 810.

The district court in this case violated *Phillips Petroleum Co. v. Shutts* by permitting Class counsel to proceed with discovery against the competent fee objectors, which required retaining counsel in Missouri to oppose the motion for discovery or risk having it granted by default. Sitting for a deposition requires the retention of an attorney even when the deposition is taken in the absent plaintiff's home state. The burden of sitting for a deposition over the holiday season unduly encumbered the right to be heard to the point where the court was no longer in compliance with *Shutts*. Imposing the costs of retaining multiple attorneys on a class action objector is inconsistent with the due process required by *Shutts*.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's Order striking the Pentz Objection; reverse the district court's Order awarding attorney's fees; and remand with instructions to calculate a fee that falls within this Circuit's range of reasonableness.

Appellant the Estate of Connie Pentz, by her representative,

*/s/ John J. Pentz*
John J. Pentz, Esq.
13133 N. Vistoso Ranch Pl.
Oro Valley, AZ 85755
T: 978.985.4668
jjpentz3@gmail.com

## CERTIFICATE OF COMPLIANCE WITH
## PAGE LIMITATIONS, TYPEFACE REQUIREMENTS
## AND TYPE STYLE REQUIRENTS

Pursuant to FRAP 32(a)(7)(C), I hereby certify that this brief was produced in Times New Roman 14-point type and contains no more than 4400 words.

I further certify that the electronic copy of this brief filed with the Court is identical in all respects to the hard copy filed with the Court, and that the electronic version is virus free as confirmed by the McAfee Security Scan program.

*/s/ John J. Pentz*
John J. Pentz

## Anti-Virus Certification

In accordance with Eighth Circuit Local Rule 28 A (h)(2), I certify that this Brief and the Addendum thereto have been scanned for viruses and are virus free.

*/s/ John J. Pentz*
John J. Pentz

## CERTIFICATE OF SERVICE

I hereby certify that on November 20,2023, I filed the foregoing Brief via the ECF filing system for the United States Court of Appeals for the Eighth Circuit, and that as a result each counsel of record received an electronic copy of this Brief on November 20, 2023.

*/s/ John J. Pentz*
John J. Pentz